UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ASHLEY TRIPLETT,

    Plaintiff,

-VS-                              CASE NO.:

NAVIENT SOLUTIONS, INC.,

    Defendant.
_____/

## COMPLAINT

COMES NOW, Plaintiff, ASHLEY TRIPLETT, by and through the undersigned counsel, and sues Defendant, NAVIENT SOLUTIONS, INC., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1. The TCPA was enacted to prevent companies like NAVIENT SOLUTIONS, INC. from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

1

3.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the ***1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls.  The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. Venue is proper in this District as Plaintiff resides within this District (DeKalb County, Georgia), the violations described in this Complaint occurred in this District and the Defendant transacts business within DeKalb County, Georgia.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Georgia, residing in Stone Mountain, DeKalb County, Georgia.

9. Plaintiff is an "alleged debtor".

10. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

11. Defendant, NAVIENT SOLUTIONS, INC. (hereinafter "Navient Solutions"), is a corporation with its principal place of business located at 2001

Edmund Halley Drive, Reston, Virginia 20191 and which conducts business in the State of Georgia and has a registered agent, Corporation Service Company located at 40 Technology Parkway South, #300, Norcross, Georgia 30092.

12. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (404) ***-8103, and was the called party and recipient of Defendant's hereinafter described calls.

13. In or about 2011, Navient Solutions initiated its campaign of automated telephone calls to the Plaintiff on her aforementioned cellular telephone. Upon receipt of the calls, Plaintiff's caller ID identified that the calls were being initiated from, but not limited to, the following phone numbers: (202) 899-1326, (386) 269-0513, (512) 377-9223, (513) 914-4619, (570) 904-7853, (607) 271-6203, (615) 432-4236, (617) 762-5965, (716) 707-3372, (765) 637-0783, (856) 242-2509 and (856) 242-2509, and when those numbers are called, a recording begins that states: "Welcome to Navient. This call may be monitored and or recorded for quality purposes. Please enter your 9-digit social security number or hold for the next available representative."

14. Upon information and belief, some or all of the calls made to Plaintiff's cellular telephone number from Defendant were made using an "automatic telephone dialing system" which has the capacity to store or produce

telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because when she would answer the phone, she would either hear an extended pause before an agent/representative would come on the line or a prerecorded message would play stating the call was from Navient concerning her student loan.

15. Furthermore, each or some of the calls at issue were placed by Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

16. None of Defendant's calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

17. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

18. In or about May of 2012, due to the ceaseless barrage of phone calls received from Defendant, Plaintiff answered a call from Defendant, met with a prerecorded message, held the line to be connected to a live agent, was eventually connected to a live agent, explained that she had just moved and was attempting to

make the payments, and demanded that Defendant cease placing calls to her cellular telephone number.

19. During the aforementioned May of 2012 phone conversations with Defendant's agent/representative, Plaintiff expressly revoked any consent Defendant may have believed they had concerning the placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

20. Each subsequent call Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

21. Each subsequent call Defendant made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

22. Again, on or around April 25, 2016, due to continued calls to her aforementioned cellular telephone number from Defendant, Plaintiff answered a call from the Defendant, met with a prerecorded message, held the line to be connected to an agent/representative, was eventually connected to an agent/representative, explained to the agent/representative that she previously requested they stop calling her cellular telephone, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

23. Also, on or around May 9, 2016, due to continued calls to her aforementioned cellular telephone number from Defendant, Plaintiff answered a call from the Defendant, met with a prerecorded message, held the line to be connected to an agent/representative, was eventually connected to an agent/representative, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

24. Additionally, on or around June 23, 2016, due to continued calls to her aforementioned cellular telephone number from Defendant, Plaintiff answered a call from the Defendant, met with a prerecorded message, held the line to be connected to an agent/representative, was eventually connected to an agent/representative, and again demanded that Defendant cease placing calls to her aforementioned cellular telephone number.

25. On at least seven (7) separate occasions, Plaintiff has answered a call from Defendant, been met with a prerecorded message, held the line to speak to a representative, and demanded that Defendant cease placing calls to her cellular telephone number.  Her principal reason for answering these calls and making these demands of Defendant was the cumulative injury and annoyance she suffered from the calls placed by Defendant.  These injuries are further described below in paragraphs 30 through 36 herein.

26. Each of Plaintiff's conversations with Defendant demanding an end to the harassment were ignored.

27. Despite actual knowledge of their wrongdoing, Defendant continued the campaign of abuse, calling the Plaintiff despite not having her express consent to call her aforementioned cellular telephone number.

28. From about May of 2012 through the filing of this Complaint, Defendant has made over one-thousand eight hundred (1,800) calls to Plaintiff's cellular telephone number, or as will be established after a thorough review of Defendant's records.

29. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling multiple times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

30. From each and every call placed without consent by Defendant to the Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

31. From each and every call placed without consent by Defendant to the Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the cellular

telephone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's call.

32. From each and every call placed without consent by Defendant to the Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary. Even for unanswered calls, the Plaintiff had to waste time to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of the Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

33. Each and every call placed without consent by Defendant to the Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, the Plaintiff had to go through the unnecessary trouble of answering them. Even for unanswered calls, the Plaintiff had to address the missed calls notifications and call logs reflecting the unwanted calls. This also impaired the usefulness of these features of the Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

34. Each and every call placed without consent by Defendant to the Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

35. Each and every call placed without consent by Defendant to the Plaintiff's cell phone resulted in the injury of a trespass to the Plaintiff's chattel, namely her cellular phone and her cellular phone services.

36. As a cumulative result of Defendant's campaign of unlawful calls to Plaintiff's aforementioned cellular telephone number, Plaintiff suffered the injuries of annoyance, anxiety, intimidation, and emotional distress.

37. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendant, to remove the number.

38. Defendant has a corporate policy structured so as to continue to call individuals like Plaintiff, despite these individuals explaining they do not wish to be called.

39. Defendant's corporate policy provided no means for Plaintiff to have Plaintiff's number removed from its call lists.

40. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

41. Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call despite being requested to stop.

42. Defendant has had numerous complaints against it from consumers across the country asking to not be called; however, Defendant continues to call these individuals.

43. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiff.

## COUNT I
### (Violation of the TCPA)

44. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-three (43) as if fully set forth herein.

45. Defendant willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff wished for the calls to stop.

46. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Navient Solutions, Inc. for statutory damages, treble damages, punitive damages, actual damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*s/ Octavio Gomez*
OCTAVIO GOMEZ, ESQUIRE
Georgia Bar #: 617963
MORGAN & MORGAN, TAMPA, P.A.
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: (813) 223-5505
Email: TGomez@ForThePeople.com
Secondary: LCrouch@ForThePeople.com
*Attorney for Plaintiff*